# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff*,

vs.

Case No.10-10057-01-EFM

SHIVANTHA KULATUNGA,

*Defendant.*

**ORDER**

Presently before the Court is Defendant Shivantha Kulatunga's Motion to Suppress and Notice of Intent to Present "Reverse" 404(b) Evidence. The United States opposes both motions. The Court conducted a hearing on September 29, 2010. For the reasons detailed below and as stated on the record at hearing, the Court denies the Motion to Suppress and grants the Notice to of Intent to Present "Reverse 404(b) Evidence.

**Motion to Suppress**

Kulatunga's Motion to Suppress concerns the warrant application and related affidavit along with the subsequent search of his residence on January 6, 2010. The search warrant was prepared by Detective Russell Almes of the Liberal, Kansas police department, and signed by Judge Clinton Peterson of the Seward County, Kansas District Court. Kulatunga claims that the warrant affidavit lacked probable cause to justify the warrant, asserting that the affidavit failed to tie the evidence sought to the residence searched, and in fact, failed to identify or even mention his residence in the

affidavit. As a result, Kulatunga contends that the evidence obtained through the search warrant must be suppressed. Kulatunga also contends that because the affidavit in support of the warrant was so facially deficient, the executing officer could not reasonable believe it was valid.

### *1. Probable Cause*

Reviewing courts give "great deference" to the issuing judge's determination of probable cause.[1] "If the judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners."[2] The Court's duty is to ensure that the issuing judge had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause.[3] "The task of the issuing judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4] "The test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched."[5] Thus, only a probability and not a prima facie showing is the standard for probable cause.[6]

---

[1] *United States v. Finnigin*, 113 F.3d 1182, 1185 (10th Cir. 1997).

[2] *United States v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) (citations omitted).

[3] *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[4] *Id.* (citing *Gates*, 462 U.S. at 238).

[5] *Id.* (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[6] *Id.* (citing *Gates*, 462 U.S. at 235).

The Court is underwhelmed by the affidavit submitted in support of the search warrant in this case. While the issuing judge is permitted to draw reasonable inferences from facts presented in the affidavit supporting the application for a search warrant,[7] asking a judge to draw an inference that would be required to find the warrant viable under the Fourth Amendment expects more of the judge and less from law enforcement than is appropriate. The affidavit must provide some connection between the items sought and the residence to be searched. This affidavit provides no such connection, and as a result, the Court must conclude that the affidavit failed to provide an adequate showing of probable cause for the search.

## 2. Good Faith Doctrine

Even though the affidavit did not support probable cause, the Court upholds the search based on the good faith exception of *United States v. Leon*.[8] The good faith doctrine evolved because "[w]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[9] This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by the magistrates."[10] Because "officers are generally not required to second-guess the magistrate's decision in granting a warrant, ... evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by

---

[7] *See United States v. Tisdale*, 248 F.3d 964, 970-71 (10th Cir. 2001)

[8] 468 U.S. 897 (1984).

[9] *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *United States v. Leon*, 468 U.S. at 913).

[10] *United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005) (citing *Leon*, 468 U.S. at 916).

the officers in objective good faith."[11]  "In answering this question, the court should consider all of the circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.' "[12]

There are four exceptions to reliance on the good faith doctrine: (1) where the judge issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned his neutral and detatched judicial role; (3) where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so facially deficient and fails to particularize that an officer cannot reasonably believe it to be valid.[13]  Kutalunga relies on the third and fourth factors in arguing for suppression of the evidence.

During the hearing, ATF Special Agent Douglas Monty testified that he assisted in the fire investigation of the Rent-A-Center and was one of the officers that executed the search warrant at Kutalunga's residence.  Agent Monty stated that prior to executing the warrant, he reviewed both the affidavit and the signed warrant, and believed that there was no reason that should prevent him from executing the warrant.

First, the Court is otherwise familiar with Agent Monty and is aware of his expertise in these types of investigations.  Based on his reputation, experience, and testimony in this case, the Court gives great weight to his testimony that he examined and felt comfortable that the contents of the affidavit gave rise to probable cause for the warrant to be issued, and finds Agent Monty's testimony credible.  The officers involved were operating under the rules as they understood them, and there

---

[11]*Id.* (citing *Leon*, 468 U.S. at 916).

[12]*United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

[13]*Leon*, 468 U.S. at 923.

is no indication that they were acting in bad faith by executing the search warrant authorized by the judge. The Court does not find that suppressing the evidence would serve the purposes of the exclusionary rule in this case. In addition, while the affidavit in support of the warrant failed to reference Kutalunga's address, the application for search warrant, which accompanied the affidavit, and the search warrant itself specifically identified Kutalunga's residence by address and description, and also listed the particular items sought. Thus, the issuing judge set limitations that precluded the officers from searching wherever and for whatever they wanted. Therefore, relying heavily on *Leon*, the Court finds that the officers executed the warrant in good faith. Accordingly, the Court denies Kutalunga's Motion to Suppress.

**REVERSE 404(b) EVIDENCE**

Kulatunga's Notice to Present Reverse 404(b) evidence concerns his intent to present evidence at trial to negate his guilt. Kutalunga asserts that he will demonstrate that Rent-A-Center's assistant manager, Alex Lavato, had motive, opportunity, and plan to commit the crime with which Kutalunga is charged. Specifically, Kutalunga asserts that Mr. Lavato has admitted that for some time, he has had substantial financial difficulties, so much that he receives telephone calls from collectors while he is at work. Kutalunga contends that because of these difficulties, Mr. Lavato had the motive to commit the arson to cover up the theft of approximately $10,000 missing from the business at the time of the fire. In addition, Kutalunga asserts that Mr. Lavato had access to the building, and along with other circumstances, implicate Mr. Lavato at least by coincidence. For these reasons, Kutalunga contends that he should be permitted to present evidence in his defense that Mr. Lavato is the person guilty of committing this crime.

"Evidence of a witnesses' other wrongs, acts, or crimes is admissible for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him," which is commonly referred to as "reverse 404(b) evidence."[14] The evidence, however, must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice, confusing of the issues, or misleading the jury.[15] In addition, the Supreme Court has noted that "[e]vidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt . . . ."[16] A defendant, however, may not merely speculate, but must show a nexus between the crime charged and the alleged alternative perpetrator.[17]

After reviewing the parties' briefing, the relevant case law, and hearing the parties' arguments, the Court concludes that the nexus between Mr. Lavato and the crime involved in this case is not so tenuous so as to preclude Kulatunga from presenting evidence on an alternative perpetrator theory. Although the nexus between Mr. Lavato and the arson is not strong, it appears to the Court that it is at least as strong as the nexus between the defendant and the crime in *Jordan*, a case which the Tenth Circuit affirmed based on the abuse of discretion standard, but where it indicated in *dicta* that it nonetheless disagreed with the lower court's decision denying presentation of "reverse" 404(b) evidence. Therefore, the Court will permit Kulatunga to present "reverse" 404(b) evidence concerning Mr. Lavato at trial.

---

[14]*United States v. Montelongo*, 420 F.3d 1169, 1174 (10th Cir. 2005) (internal quotations omitted).

[15]*United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007).

[16]*Id.* (citing *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006)).

[17]*Id.* at 1219 (citing *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 20) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant's Notice of Intent to Introduce "Reverse" 404(b) Evidence (Doc. 21) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 29th day of September, 2010.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE